Paul E. Shelton
Federal Defenders of Eastern Washington & Idaho
306 E. Chestnut Ave.
Yakima, WA 98901
(509) 248-8920

Attorney for Defendant
Jeremy Jay Gullett

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
The Honorable Stanley A. Bastian

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br> v.<br><br>Jeremy Jay Gullett,<br><br>        Defendant. | No. 4:19-CR-6017-SAB<br><br>**Motion to Reopen or Reconsider Motion to Suppress, Supplemental Brief in Support of Motion to Suppress** |

  Mr. Gullett previously moved to suppress all evidence seized during his stop and arrest (and subsequent search of the vehicle he was in) which occurred on February 22, 2019. *See* ECF 26. After the motion was fully briefed, the Court held a hearing on the motion. *See* ECF 44. The parties presented argument on six stipulated facts for approximately 45 minutes before taking testimony from three police officers. *See id.* The Court took the motion under advisement and indicated that it would give the parties an opportunity to file supplemental briefing to address issues and questions raised at the hearing. *See id.* Specifically, the Court indicated that Mr. Gullett could file any supplemental briefing by October 11, 2019, and the government could file a response by October 18, 2019. *See id.*

Motion to Reopen or Reconsider Motion to Suppress, Supplemental Brief in Support of Motion to Suppress: 1

Despite its order permitting supplemental briefing, on October 11, 2019, the Court issued an order denying Mr. Gullett's motion. *See* ECF 45. The Court's order says nothing about the permitted supplemental briefing, i.e. that the Court had reconsidered the matter and no longer found supplemental briefing necessary. *See id.* Given that the Court's order was entered less than an hour prior to counsel's filing of the instant pleading, counsel will not address the conclusions set forth in the Court's order.

Mr. Gullett hereby moves the Court to reopen his Motion to Suppress and to Reconsider its ruling on that motion. Pursuant to this Court's directive at his October 4 hearing, Mr. Gullett files the instant brief to address some of the issues that the Court indicated the parties should address in supplemental briefing. For the reasons presented herein and in his prior briefing, this Court should suppress all evidence seized from the Saturn Ion as a result of the February 22, 2019 incident.

**Argument**

**1. The officers had no authority to search the Saturn Ion based solely on arrested Mr. Gullett on his valid arrest warrant.**

At the outset of the hearing on the motion to suppress, the government presented six stipulated facts to the Court. *See* ECF 44. Those facts are: 1) Mr. Gullett had a valid arrest warrant; 2) the officers observed and recognized Mr. Gullett; 3) the officers arrested Mr. Gullett pursuant to this warrant; 4) the officers called for a K9 to sniff the Saturn Ion; 5) after the K9 alerted, the officers applied for and obtained a search warrant for the Saturn Ion; and 6) the Saturn Ion was searched pursuant to the

search warrant. *See id.* The Court heard argument from the parties about whether any further factual testimony was necessary. As argued at the hearing and in his Reply (*see* ECF 38 at pp. 7-12), it is beyond question that the officers did not have authority to search the Saturn Ion after arresting Mr. Gullett on his valid arrest warrant.

The reason this question is settled is because the Supreme Court has answered it. In *Arizona v. Gant*, the Supreme Court held that police cannot search a vehicle where an arrestee cannot access its interior (negating safety concerns) and there is no reason to believe evidence of the offense of arrest may be found in the vehicle. *See* 556 U.S. 332, 335, 343-44 (2009). The defendant in *Gant* had a valid arrest warrant and police had also observed him commit a new offense of driving with a suspended license. The Court held their search of his car after arresting him, though, was unlawful.

The Court's analysis in *Gant* applies easily and clearly to Mr. Gullett's case. As in *Gant*, the officers knew Mr. Gullett had an active warrant and they arrested him pursuant to that warrant. Both officers involved in initially arresting Mr. Gullett testified they did not see him commit any criminal or suspicious actions, and his arrest was based entirely on the warrant. They secured Mr. Gullett in handcuffs in their police vehicle. There was no basis whatsoever for them to search the Saturn Ion for evidence because there could be no relevant evidence in the vehicle related to his arrest warrant.

The Supreme Court's ruling in *Gant* controls this question, and the answer is clear: the police did not have authority to search the Saturn Ion at the time they called for a K9 sniff.

**2. The officers had no authority to conduct a K9 sniff of the Saturn Ion because it was parked on private property that they did not have either consent or probable cause to enter, making this K9 sniff a search, distinguishing permissible K9 sniffs on publicly accessible property.**

Before taking testimony from the three witnesses present in the courtroom, the Court presented the parties with a question: did the police need a reason (i.e. some authority) to conduct a K9 sniff in the motel parking lot? Mr. Gullett's position was yes, the police did need some reason because the motel's parking lot is private (contrary to the government's assertion in its Response) and they otherwise had no authority to search the vehicle. The government's position was no, the police did not need any authority because a K9 sniff is not a search, citing the Supreme Court's ruling in *Illinois v. Caballes*, 543 U.S. 405 (2005). The Court must resolve this question.

The Supreme Court has held that a K9 sniff is, in most contexts, not a "search" within the meaning of the Fourth Amendment. To counsel's knowledge, the Supreme Court's first definitive stance on this issue came in *United States v. Place*, 462 U.S. 696 (1983). The Court held that a K9 sniff "discloses only the presence or absence of narcotics" making it "*sui generis*" from other investigative tools. *Place*, 462 U.S. at 707. The Court thus found that a K9 sniff of the defendant's luggage, "**which was located**

**in a public place**" (an airport), was not a "search" under the Fourth Amendment. *Id.* (emphasis added).

More recently, the Supreme Court issued two rulings that further clarify the permissibility of K9 sniffs. First, in *Illinois v. Caballes*, the Court held that police officers did not need reasonable suspicion to conduct a K9 sniff during an otherwise legitimate traffic stop. *See* 543 U.S. 405, 407-08. Specifically, the Court reasoned there is no legitimate privacy interest in possessing contraband; thus, because a K9 sniff only reveals the presence of contraband,[1] it does not affect a privacy interest and does not implicate the Fourth Amendment. *See id.* at 408-10. Two dissenting justices noted the potential fallout of the majority's ruling—"every traffic stop could become an occasion to call in the dogs, to the distress and embarrassment of the law-abiding population." *Id.* at 422 (Ginsburg, J., dissenting). As discussed below, this concern actually understates the potential impact of the government's position in Mr. Gullett's case.

The second recent Supreme Court ruling on K9 sniffs came in *Florida v. Jardines*, 569 U.S. 1 (2013). Here, the Supreme Court found that a K9 sniff on the front porch of a home was a search within the meaning of the Fourth Amendment. *See id.* at 11-12. The Court rejected the state's argument that *Place* and *Caballes* "by definition cannot implicate any legitimate privacy interest," holding that private property remained protected under the Fourth Amendment even against K9 sniffs. *See id.* The Court's

---

[1] One justice disputed this premise, finding "[t]he infallible dog … is a creature of legal fiction." *Illinois v. Caballes*, 543 U.S. 405, 411 (2005) (Souter, J., dissenting).

Motion to Reopen or Reconsider Motion to Suppress, Supplemental Brief in Support of Motion to Suppress: 5

ruling rested on the fact that the front porch was clearly the curtilage of the home, distinguishing it from "open fields" that may be searched even if privately owned. *See id.* at 6-7.

The combined holdings of *Place*, *Caballes*, and *Jardines* are that a K9 sniff is not a search within the meaning of the Fourth Amendment, except where it occurs on protected private property. Circuit case law appears to agree with these general principles.[2] The Fifth Circuit summarized it well in *United States v. Beene*, finding that a K9 sniff "may nevertheless be an unwarranted search when it involves an intrusion into a constitutionally protected area." 818 F.3d 157, 162 (5th Cir. 2016). But, "a dog sniff is not a search in a public place." *Id.* at 163. In *Beene*, the Court ultimately upheld a K9 sniff occurring in a driveway of a home because it was not within the home's curtilage and instead was treated as an "open field" and there is no reasonable expectation of privacy in odors in plain view (or rather, plain smell) in an open field. *See id.*

Given these holdings, an undisputed fact takes on paramount importance: the Motel 6 parking lot is a private parking lot and any unauthorized vehicles may be towed, as signs at both entrances make clear. *See* ECF 38-1. Officers Schwartz and Grant's

---

[2] *See, e.g., United States v. Beene*, 818 F.3d 157, 162-63 (5th Cir. 2016) ("A sniff may nevertheless be an unwarranted search when it involves an intrusion into a constitutionally protected area…. [But,] a dog sniff is not a search in a public place…."); *United States v. Dyson*, 639 F.3d 230, 232 (6th Cir. 2011) (holding that reasonable suspicion was not required to perform a K9 sniff on a vehicle "on publicly accessible property," in this case a gas station parking lot); *and United States v. Grogg*, 534 F.3d 807, 810-11 (7th Cir. 2008) (noting that a K9 sniff **in a public place** is not a search") (emphasis added).

Motion to Reopen or Reconsider Motion to Suppress, Supplemental Brief in Support of Motion to Suppress:  6

testimony made clear they were not called out to the motel by staff and did not otherwise have consent to be on the property. Though the parking lot is not enclosed by a gate or fence, the signs posted at the two entrances make clear that unauthorized entrance is not permitted. This parking lot is not an open field. It is private property deserving of Fourth Amendment protections against unreasonable searches. Therefore, the officers needed some reason to conduct the K9 sniff. They had none, making their actions unlawful.

**3.  Mr. Gullett has standing to object to the K9 sniff despite not having been a registered guest at the Motel 6.**

During the preliminary arguments, after discussing whether the police needed some authority to conduct a K9 sniff on the motel property, the government suggested that Mr. Gullett may lack standing to raise that issue. Anticipating that the government will expand on that argument in its own supplemental briefing, Mr. Gullett will argue herein why he has standing to object to the unlawful K9 sniff.

A court generally must answer two questions to determine whether an unconstitutional search has occurred. First, does the individual contesting the search have a subjective expectation of privacy? Second, was that individual's expectation of privacy one that society would recognize as objectively reasonable? *Smith v. Maryland*, 442 U.S. 735, 740 (1979). Applied to this case, those questions would present as follows: did Mr. Gullett have an expectation of privacy while parked at the Motel 6 parking lot, and is such an expectation objectively reasonable?

The motel parking lot was private. Signs at both entrances confirmed this. There is no record of any regular monitoring or surveillance of the lot by police officers. There is no warning that vehicles parking in the lot are subject to searches. Mr. Gullett certainly would not expect his vehicle to be subject to a K9 sniff on private property. It is objectively reasonable for Mr. Gullett to expect his vehicle would be safe from such a search. Therefore, this Court should find that Mr. Gullett has standing to challenge the officers' unconstitutional actions.

## CONCLUSION

For all the reasons set forth herein and in his prior pleadings, this Court should suppress all evidence seized from the Saturn Ion.

Dated: October 11, 2019.

By s/ Paul E. Shelton
Paul E. Shelton, 52337
Federal Defenders of Eastern Washington and Idaho
306 East Chestnut Avenue
Yakima, Washington 98901
(509) 248-8920
(509) 248-9118 fax
Paul_Shelton@fd.org

Motion to Reopen or Reconsider Motion to Suppress, Supplemental Brief in Support of Motion to Suppress: 8

**Certificate of Service**

    I hereby certify that on October 11, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following: Benjamin D. Seal, Assistant United States Attorney.

                                          s/ Paul E. Shelton
                                          Paul E. Shelton